IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOHN W. MONCUS, JR.,               )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )        Civil Action No. 2:03CV416-W
                                   )
MIKE JOHANNS, Secretary,           )
United States Department of Agriculture,  )
                                   )
        Defendant.                 )

## MEMORANDUM OF OPINION AND ORDER

Plaintiff John W. Moncus, Jr., a employee of the United States Department of Agriculture (USDA), brings this Title VII action against the Secretary, USDA, alleging that defendant discriminated against him on the basis of his race and gender when he was not selected for the position of Program Complaints Specialist.  This action is presently before the court on the motion for summary judgment filed by defendant (Doc. # 41).  Defendant argues that: (1) plaintiff's claims are time-barred because he failed to initiate contact with an EEO counselor within 45 days of his non-selection for the position; (2) plaintiff's claims are time-barred because he failed to file suit within 90 days of the final agency action denying his administrative complaint; and (3) plaintiff cannot establish that the legitimate, non-discriminatory reasons articulated by defendant for its decision are a mere pretext for unlawful discrimination.  Upon consideration of the motion, the court concludes that it is due to be denied.

# BACKGROUND [1]

In January 1998, pursuant to vacancy announcement number F8-FSA-092, USDA's Farm Service Agency (FSA) began accepting applications for fifteen Program Complaints Specialist positions. The closing date of the vacancy announcement was February 9, 1998. (Plaintiff's Exhibit 4, Vacancy Announcement F8-FSA-092 ("092 announcement")). Fourteen applicants were determined to be qualified for the positions at the GS-11, GS-12, or GS-13 level. (Defendant's Exhibit 9). On February 19, 1998, the applications of these candidates were rated by a merit promotion panel consisting of three members. (Defendant's Exhibits 15, 16). Based on the panel's rating, twelve of the applicants were determined to be "best qualified" for the positions at one or more of the competitive levels and were referred to the selecting official, David Winningham, for consideration. (Defendant's Exhibits 16, 17). Plaintiff was among the "best qualified" applicants for the GS-12 level. (Id.). On March 5, 1998, after conducting interviews, Winningham selected seven of the applicants. Plaintiff was not among those selected. (Defendant's Exhibit 18). On March 24, 1998, plaintiff received an FSA Form 337 advising him that the vacancy announcement was being readvertised, and that plaintiff was not required to reapply as his application would automatically be considered. The new announcement (F8-FSA-092A, "092A announcement") was enclosed. It had a closing date of March 30, 1998, and stated that "several positions" were available.

---

[1] As it is required to do, the court has viewed the evidence presented on the motion for summary judgment in the light most favorable to the plaintiff. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992). The court considers any objections not raised to the use or admissibility of the evidence to be waived for purposes of this motion. Davis v. Howard, 561 F.2d 565, 570 (5th Cir. 1977).

(Defendant's Exhibit 26, 28; Plaintiff's Exhibit 17).  A new merit promotion panel convened on April 1, 1998 to evaluate the applications.  Plaintiff was again among those determined to be "best qualified" at the GS-12 level.  Winningham and the newly-selected Branch Chief, Melvin Weil, conducted interviews beginning on April 3, 1998.  Weil called plaintiff on April 2, 1998 to schedule an interview time on April 3, 1998.  Plaintiff told Weil that he was unable to interview on the following day because his daughter had a doctor's appointment in Mobile.  Weil asked plaintiff to call him back at 1:00 that day to reschedule the interview.  When plaintiff called Weil, Weil told him that Winningham had said that the first interview "would be all that they needed" and that it was not necessary that plaintiff return for a second interview.  On April 13, 1998, Winningham selected eight of the applicants for the remaining positions.  (Defendant's Exhibits 21-26).  On April 23, 1998, plaintiff received an FSA Form 337 advising him that he had not been selected.  (Defendant's Exhibits 26, 29).

## THE SUMMARY JUDGMENT STANDARD

A party seeking summary judgment bears the initial burden of demonstrating to the court the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions that it believes show an absence of any genuine issue of material fact.  Hairston v. Gainesville Publishing Co., 9 F.3d 913 (11th Cir. 1993).  For issues on which the non-movant bears the burden of proof at trial, "the moving party is not required to support its motion with affidavits or other similar material negating the opponent's claim in order to discharge this initial responsibility.  Instead, the moving party simply may show [ ] – that is, point[ ] out to the district court – that there is an absence of

3

evidence to support the non-moving party's case." <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1115-16 (11th Cir. 1993)(quoting <u>U.S. v. Four Parcels of Real Property</u>, 941 F.2d 1428, 1437-38 (11th Cir. 1991)(*en banc*)).

In <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), the Court held that if a party opposing summary judgment "fails to make a showing sufficient to establish the existence of an element essential to their party's case, and on which their party will bear the burden of proof at trial," summary judgment shall be granted.

> [W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial. . . We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56 except the mere pleadings themselves. . . ."

<u>Id.</u> at 324.

For summary judgment purposes, an issue of fact is "material" if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence or absence might affect the outcome of the suit. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. <u>Matsushita Electrical Industrial Company v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). The court must view the evidence, and all factual inferences properly drawn from the evidence, in the light most favorable to the nonmoving party. <u>Welch v. Celotex Corp.</u>, 951 F.2d 1235, 1237 (11th Cir. 1992); <u>Rollins v.</u>

TechSouth, Inc., 833 F.2d 1525, 1528 (11th Cir. 1987).  It is improper for this court to weigh

conflicting evidence or make credibility determinations; instead, "the evidence of the non-

movant is to be believed, and all justifiable inferences are to be drawn in his favor."

Anderson, 477 U.S. at 255.  Where a reasonable fact finder may "draw more than one

inference from the facts, and that inference creates a genuine issue of material fact, then the

court should refuse to grant summary judgment."  Barfield v. Brierton, 883 F.2d 923, 933-34

(11th Cir. 1989) (citation omitted).

## DISCUSSION

### Forty-Five Day Time Period for Initial Contact

Defendant argues that the present action is time-barred because plaintiff failed to

contact an EEO counselor within 45 days of his non-selection, as required by 29 C.F.R.

§ 1614.105(a)(1).

> Federal sector employees . . who believe that they have been subject to
> discrimination, must initiate contact with an EEO counselor within 45 days of
> the effective date of the personnel action.  See 29 C.F.R. § 1614.105(a)(1).  An
> employee who fails to do so suffers the dismissal of his complaint.  Id.,
> § 1614.107(a)(2); cf. Manning v. Carlin, 786 F.2d 1108, 1109 (11th Cir. 1986).
>
> \*   \*   \*   \*   \*
>
> The prerequisite of timely contact with an EEO counselor is not jurisdictional,
> and is subject to waiver, estoppel and equitable tolling.  See 29 C.F.R.
> § 1614.604(c); see also Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393,
> 102 S.Ct. 1127, 1132, 71 L.Ed.2d 2345 (1982).

Robinson v. Johanns, 147 Fed. Appx. 922, 2005 WL 2175047 (11th Cir. Sep. 9,

2005)(unpublished disposition)(footnote omitted).

Plaintiff does not suggest that he made contact with an EEO counselor within 45 days.[2]

Instead, plaintiff responds that: (1) defendant's argument regarding the 45-day time limit is

a "red herring" because it "is based upon a regulation [Defendant's Exhibit 39] which, on its

_____

[2]  By failing to argue in his brief in opposition to the present motion  that his contact with the EEO counselor was made within the 45-day period, plaintiff has waived the argument. Additionally, the court declines to consider argument in surreply – presented by counsel without leave of court in plaintiff's response to defendant's motion to strike exhibits – that the 45-day period should be equitably tolled.  However, if the court were to consider these arguments, it would conclude that plaintiff did not make the required initial contact within the applicable 45-day period and that equitable tolling is inappropriate in this case.  In a March 9, 1998 letter to Senator Shelby – after the interviews on the first vacancy announcement but before the second announcement – plaintiff stated that he was aware that thirteen qualified candidates were considered for a total of fifteen positions, that six candidates had been selected, that "several of these candidates have little or no experience in farm program loan making and servicing" while plaintiff is "highly qualified" in this area, and that the remaining positions were being readvertised.  (Plaintiff's Exhibit 15).  He implied that the action violated Secretary Glickman's civil rights policy statement.  It is clear from the letter that plaintiff suspected discrimination as early as the date of this letter, and plaintiff so testified in his deposition.  (Moncus depo., p. 56).  Additionally, the text of plaintiff's May 1, 1998 FOIA request clearly indicates that he then suspected discrimination on the basis of gender and race. (Plaintiff's Exhibit 23; Plaintiff's deposition, pp. 65-66).  Further, it is evident from plaintiff's June 22, 1998 letter regarding his FOIA request that plaintiff did not require a response to his FOIA request to suspect discrimination.  (Plaintiff's Exhibit 24)("It does appear from the selections made that discrimination may have occurred during this process.").

Plaintiff was formally notified of his non-selection on April 23, 1998 and then suspected discrimination.  (See Plaintiff's brief, p. 11; Plaintiff's Exhibit 18).  Absent an extension of time, his deadline for making initial contact with an EEO counselor – not an onerous requirement – expired 45 days thereafter.  Cf. Pollock v. Chertoff, 361 F. Supp. 2d 126 (W.D.N.Y. 2005)("Plaintiff's argument that she is not responsible for failing to make a timely request for informal counseling because the Government responded to her FOIA request well after the 45-day window had closed is completely without merit. . . . A FOIA request cannot take the place of the very specific EEOC administrative process."); see also Ross v. Buckeye Cellulose Corp., 980 F.2d 648, 660-61 (11th Cir. 1993)(citing McClinton v. Alabama By-Products Corp., 743 F.2d 1483, 1487 (11th Cir. 1984) for the proposition that equitable tolling of limitations period is inappropriate "where plaintiff 'suspects that he may have been discriminated against on account of age and is also generally aware of his legal right to obtain redress for that wrong.'"); Robinson v. Johanns, 147 Fed. Appx. 922, 924, 2005 WL 2175047 (11th Cir. Sep. 9, 2005)(unpublished disposition)("Federal employees . . . who believe that they have been subject to discrimination, must initiate contact with an EEO counselor within 45 days of the effective date of the personnel action"; 45-day period not tolled by filing of grievance with union and agency's request for an extension of time to respond to grievance).

face, did not exist until 2001, three years after the claim arose;" and (2) the 45-day time limit was either waived or extended by the EEOC.  (Plaintiff's brief, pp. 17-20).  Plaintiff bears the burden of proof on this issue.  See Ross v. Buckeye Cellulose Corp., 980 F.2d 648, 661 (11th Cir. 1993)(citing Jackson v. Seaboard Coast Line R. Co., 678 F.2d 992, 1010 (11th Cir. 1982)).

### Inapplicability of 2001 Rural Development Instruction

Plaintiff's first argument is itself a red herring.  Defendant does cite Exhibit 39, the USDA Rural Development Instruction pertaining to Equal Employment Opportunity, dated July 25, 2001, and plaintiff's testimony that he was familiar with this instruction. (Defendant's brief, pp. 19-20).  However, contrary to plaintiff's argument, defendant's contention that plaintiff failed to timely initiate contact with an EEO counselor is not "based upon" this instruction.  Defendant's argument is expressly premised on 29 C.F.R. § 1614.105(a)(1), the federal regulation establishing the 45-day time limit, not the Rural Development Instruction reiterating the requirement.  (See Defendant's brief, Doc. # 42, at pp. 1, 18).  Plaintiff concurs that the applicable Code of Federal Regulations provision (7-1-97 edition) included the 45-day time limit for initiating contact with an EEO counselor. (Plaintiff's brief, p. 17; Plaintiff's Exhibit 57).[3]  Thus, the court will turn to plaintiff's argument that the time limit was "waived and extended by the EEOC."  (Plaintiff's brief, p.

---

[3] Plaintiff has not argued that he did not know of this requirement.  In a June 22, 1998 letter, he stated that he was aware of the 45-day time limit.  (Plaintiff's Exhibit 24).

17).[4]

*Procedural History Before the Administrative Hearing*

As noted above, plaintiff received notice on April 23, 1998 that he had not been selected for a Program Complaints Specialist position.  (Defendant's Exhibits 26, 29).  On June 29, 1998 – 67 days later – plaintiff sent a letter to the Director of USDA's Office of Civil Rights complaining that he was discriminated against on the basis of his sex and race. (Plaintiff's Exhibit 26).[5]  In a letter to plaintiff dated November 17, 1998, Lucinda Riley of the Office of Civil Rights noted the 45-day time limit for initial contact, advised plaintiff that an explanation must be provided to the EEO counselor if contact is not made within the required time frame, directed plaintiff to the Farm Service Agency Informal Counseling Program, and stated that he must make contact within 15 days of receipt of the letter if he wished to pursue the matter.  (Plaintiff's Exhibit 27).  On November 23, 1998, plaintiff responded to Riley that he had already made contact with an EEO counselor and that he

---

[4] Plaintiff repeatedly refers to actions by the "EEOC" that constituted an extension or waiver of the time limit.  However, the EEOC was not involved in the administrative processing of the complaint until plaintiff requested a hearing before an administrative judge.  Most of the actions discussed by plaintiff were taken by the defendant agency, not the EEOC.  The court construes plaintiff's argument to include a contention that the defendant agency waived the 45-day deadline.

[5] The government argues that plaintiff's first contact with an EEO counselor did not occur until September 21, 1998 (see Plaintiff's Exhibit 10, Plaintiff's timeline of events at p. 36, reflecting 9-21-98 telephone call to Claude McKenzie, EEO counselor). However, the agency's EEO counselor treated June 29, 1998 as the "date of first contact" (see p. 2 of  Report of EEO Counseling, Plaintiff's Exhibit 10), as did the agency in the final agency decision it issued on June 18, 2004 (see Doc. # 100, Exhibit B to Moncus Jan 2006 affidavit).  For purposes of this motion – without deciding the issue – the court will do likewise and will treat the June 29, 1998 letter to the Office of Civil Rights as plaintiff's initiation of contact with an EEO counselor.

8

wished to pursue the matter.  (Plaintiff's Exhibit 28).  On November 30, 1998, plaintiff received a telephone call from Nilda Godwin, who told plaintiff that she had been assigned as his EEO counselor.  (Plaintiff's log attached to Plaintiff's Exhibit 10).  The following day, plaintiff forwarded information concerning his complaint to Godwin.  (Plaintiff's Exhibit 29). On December 16, 1998 – after obtaining an extension from plaintiff of the informal counseling period until December 19, 1998 (Plaintiff's Exhibit 30; see also Plaintiff's log for date 12-02-98) – Godwin sent plaintiff a letter advising him of his right to file a formal discrimination complaint within 15 calendar days of his receipt of the letter.  (Plaintiff's Exhibit 33).

On December 23, 1998, plaintiff sent a formal complaint of discrimination to the USDA Farm Service Agency.  (Plaintiff's Exhibits 34, 35).  The agency advised plaintiff that it was accepting his complaint of discrimination and referring it for investigation.  (Plaintiff's Exhibits 36-38).  Godwin subsequently issued her report regarding the informal EEO counseling that preceded the formal complaint. (Plaintiff's Exhibit 10).

The formal complaint was investigated by Marion Green, an agency EEO investigator. (Plaintiff's Exhibits 40-43).  The report of investigation was forwarded to plaintiff on February 15, 2001, with a cover letter advising plaintiff of his right to: (1) withdraw his complaint; (2) request a final agency decision by the USDA based on the evidence of record; or (3) request an administrative hearing by an EEOC administrative judge.  (Plaintiff's Exhibit 44).  On March 12, 2001, plaintiff requested a hearing.  (Plaintiff's Exhibit 45).  On April 18, 2001, Judge Clarence Bell issued a procedural order acknowledging receipt of the request for

hearing and governing the proceedings before the Administrative Judge. (Plaintiff's Exhibit 48).

*Plaintiff's Arguments*

<u>The time limit was expressly extended by the EEO Counselor</u>.  Plaintiff argues that "[i]n the report of the EEO counselor in this case, Ms. Godwin noted that an extension of time had been granted."  (Plaintiff's brief, p. 19, citing Plaintiff's Exhibit 10 at Bates Stamp 19).  On the cited page of her report, Godwin includes a paragraph reciting the "Complaint Process" which states, in part:

**COMPLAINT PROCESS:**

| | |
|---|---|
| Date of Action: | April 23, 1998 |
| Date of First Contact: | June 29, 1998 (please see note at end of report) |
| Date Complaint Assigned to FS: | November 20, 1998 |
| Extension Granted/Exp Date: | Yes (December 19, 1998) |
| Date Right to File Notice Issued: | December 16, 1998 |

(Plaintiff's Exhibit 10 at Bates Stamp 19).  Plaintiff appears to contend that the notation "Extension Granted/Exp Date: Yes (December 19, 1998)" refers to the 45-day period for initial contact with the EEO counselor. (Plaintiff's brief, p. 19).  However, it is apparent from the evidence that this notation cannot be construed to relate to anything other than plaintiff's agreement to extend the period of informal counseling to December 19, 1998.  (<u>See</u> Plaintiff's Exhibit 30 (letter from plaintiff to Godwin stating "I am notifying you of my authorization to grant an extension of the EEO counseling period to December 19, 1998."; Plaintiff's log at Exhibit 10 for date 12-02-98 ("@2:21 PM I received a TC from Ms. Godwin requesting that I forward to her a statement that I would authorize or grant an exten[s]ion of the counseling

10

period to December 19, 1998.  I told her that I would FAX the authorization in the next few minutes."); see also 29 C.F.R. 1614.105(d),(e))(requiring that the final interview concluding the informal counseling period conclude within 30 days of initial contact unless the complainant agrees in writing to an extension of the informal counseling period).

To the extent that plaintiff intended to argue that Godwin extended the 45-day period for initial contact by the note at the end of her report, such an argument is without merit.  In the note following her report, Godwin makes no statement that the time period was expressly extended, waived or tolled, or that the contact was timely.  Rather, she sets forth plaintiff's explanation for his failure to make initial contact prior to June 29, 1998:

**NOTE:**

Complainant was aware of the forty-five (45) day period in which to contact an EEO counselor for an employment discrimination concern.  His decision on filing an EEO complaint was to be determined by the information provided him by the alleged discriminating Agency through the Freedom of Information Act/Privacy Act (copy of two requests attached).

When Complainant finally received the response to his FOIA request on June 29, 1998 (copy of FOIA response attached), he believed the Agency did not honor his request for all releasable data and information.  Complainant then decided to file a written EEO complaint on June 29, 1998 which he sent to the Director of Civil Rights, USDA (copy of letter attached).  A copy of response from ECD dated November 17, 1998 is attached.  Complainant's written chronology of events is also attached.

(Plaintiff's Exhibit 10 at Bates Stamp 22). This note by Godwin cannot fairly be construed as an extension of the time limit, particularly in view of the absence of any indication in either the CFR provisions or the EEOC's directives that the EEO counselor is required to resolve the issue of the timeliness of the contact.  Rather, it appears that the counselor is merely

11

supposed to identify the issue for resolution during the formal complaint process.  See 29 C.F.R. 1614.105 (failing to specify that the agency decision regarding timeliness of contact be made by the EEO counselor) ; 1614.105(c)("Counselors shall conduct counseling activities in accordance with instructions contained in Commission Management Directives); EEOC Management Directive 110 (requiring the EEO counselor, in all cases,  to conduct an inquiry into factual bases for claims, determine whether there are timeliness issues, and include the complainant's reasons for delaying contact beyond 45 days in the report, and providing for dismissal of a complaint during the formal complaint process for failure to timely initiate contact with an EEO counselor).  The court concludes that the EEO counselor did not extend the initial contact deadline.

The 45-day time limit was waived.  Plaintiff argues that the agency waived the 45-time limit by accepting the complaint, fully investigating it, issuing a report of investigation, and participating in the administrative law hearing and in the appeal of the decision of the hearing officer.  (Plaintiff's brief, pp. 18-19).  Citing Oaxaca v. Roscoe, 641 F.2d 386 (5th Cir. Apr. 3, 1981), defendant replies that plaintiff's argument is directly contrary to binding precedent in this circuit and, therefore, must be rejected.[6]

In Oaxaca, the plaintiff failed to initiate contact with an EEO counselor within 30 days of the alleged discriminatory act, the time then allowed by the regulation.  He subsequently

---

[6]  See Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981)(en banc), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

timely filed a formal administrative complaint and – after 180 days had elapsed with no final agency decision – he filed a suit in district court.  The district court dismissed the action because of plaintiff's failure to comply with the deadline for initial contact with an EEO counselor.  On appeal, plaintiff argued that the defendant agency had waived its objection to the tardiness of his initial contact.  641 F.2d at 388-89.  The court disagreed, stating, "[w]e reject Oaxaca's contention that the federal agency, by merely accepting and investigating a tardy complaint, automatically waives its objection to the complainant's failure to comply with the prescribed time [deadlines]."  Id.[7]  However, the holding of Oaxaca does not resolve the issue in the present case.  First, the facts in this case differ significantly from those in Oaxaca.  Additionally, the federal regulation governing dismissal of claims has changed since Oaxaca was decided.

As noted above, the defendant agency in the present case twice noted the timeliness problem early in the administrative process.  Lucinda Riley of USDA's Office of Civil Rights raised the issue in what was apparently the agency's first correspondence to plaintiff regarding his June 29, 1998 letter.  (Plaintiff's Exhibit 27).  Thereafter, in accordance with Riley's letter, plaintiff provided an explanation to Godwin, the EEO counselor, for his failure to initiate contact within 45 days of the challenged personnel action.  (Plaintiff's Exhibit 10).  After the informal counseling period, plaintiff filed a timely formal complaint of discrimination, which

---

[7]  See also Horton v. Potter, 369 F.3d 906, 911 (6th Cir. 2004)("Five of our sister circuits have held that when an agency accepts and investigates a complaint of discrimination . . . it does not thereby waive a defense that the complaint was untimely.")(citations omitted).

was accepted and investigated by the agency. (Plaintiff's Exhibits 10, 34, 36, 38, 40-43).  On February 15, 2001, the agency provided plaintiff with its report of investigation and, on March 12, 2001, plaintiff requested a hearing before an administrative judge.  (Plaintiff's Exhibits 44, 45).

When <u>Oaxaca</u> was decided, the applicable federal regulation provided that the agency may accept a complaint for processing *only if* both the EEO counselor contact was timely and the formal complaint was filed within fifteen days of the final interview with the EEO counselor. 29 C.F.R. 1613.214(a)(1)(1980).[8]  However, the provision pertaining to dismissal of formal complaints provided that "[t]he head of the agency or his designee *may* reject a complaint which was not timely filed . . . ."  29 C.F.R. 1613.215 (1980)(emphasis added).

Due to subsequent amendment to the federal regulations, the agency's obligation to dismiss a complaint on timeliness grounds is now less ambiguous.  In 1987, the dismissal provision was amended to read, "The agency head or designee *shall* reject or cancel a complaint . . . [t]hat is filed untimely, *unless the agency extended the time limits in accordance with § 1613.214(a)(4).*"  29 C.F.R. 1613.215(a)(4)(1987)(emphasis added); 52

---

[8]  It also provided that:

[t]he agency shall extend the time limits in this section: (i) When the complainant shows that he was not notified of the time limits and was not otherwise aware of them, or that he was prevented by circumstances beyond his control from submitting the matter within the time limits; or (ii) for other reasons considered sufficient by the agency.

29 C.F.R. 1613.214(a)(4)(1980).

FR 41923 (Oct. 30, 1987).[9]  In 1992, the EEOC restructured the federal sector complaint process and established the new regulations at 29 C.F.R. Part 1614, effective October 1, 1992. 57 FR 12634 (Apr. 10, 1992).  The new dismissal provision, section 1614.107, stated, "The agency shall dismiss a complaint or a portion of a complaint . . . [t]hat fails to comply with the applicable time limits contained in §§ 1614.105 [pre-complaint processing], 1614.106 [individual complaints] and 1614.204(c)[filing and presentation of a class complaint], unless the agency extends the time limits in accordance with § 1614.604(c) . . . ."[10]  Id. at 12649.

The federal regulation governing dismissal of discrimination complaints has provided, since November 9, 1999 – *i.e.,* at all times since plaintiff's formal complaint was accepted and referred for investigation – that:

> *Prior to a request for hearing in a case*, the agency *shall* dismiss an entire complaint . . . [t]hat fails to comply with the applicable time limits contained in §§ 1614.105, 1614.106 and 1614.204(c), unless the agency extends the time limits in accordance with § 1614.604(c).

29 C.F.R. 1614.107(a)(2)(emphasis added); 64 FR 37656 (July 12, 1999).

Under Part 1614, it is even more clear now than at the time of Oaxaca that a defendant federal agency does not waive its objection to an untimely initial contact merely by accepting and investigating plaintiff's complaint of discrimination.  However, the regulations also now clearly mandate that the agency dismiss a complaint for untimely counselor contact – prior

---

[9]  Section 1613.214(a)(4) then remained substantially the same as set forth in n. 8, *supra*.

[10]  Section 1614.604(c) then stated, and continues to state, that the time limits in Part 1614 "are subject to waiver, estoppel and equitable tolling." 57 FR 12634, 12662; 29 C.F.R. § 1614.604(c).

to a request for hearing – unless the agency extends the time limits.  The court concludes that, by failing to dismiss plaintiff's formal complaint prior to plaintiff's request for a hearing – particularly when the defendant agency recognized the timeliness issue at the outset of administrative processing and required an explanation from the complainant – the defendant waived its objection to plaintiff's untimely initial contact.  Cf. Ester v. Principi, 250 F.3d 1068 (7th Cir. 2001)(defendant agency waived untimely filing of formal complaint by issuing final decision on merits without mentioning untimely filing).  Accordingly, defendant is not entitled to summary judgment on the basis of plaintiff's failure to initiate contact with an EEO counselor within 45 days of the alleged discriminatory action.

## Motion to Strike

In its motion for summary judgment – relying on plaintiff's deposition testimony that he decided not to appeal the decision of the administrative judge and that he did not have a reason for waiting until April 2003 to file this lawsuit (see Moncus depo., pp. 77-78) – defendant argued that this action was due to be dismissed because plaintiff failed to file suit within 90 days of the final agency action denying his complaint as required by 42 U.S.C. § 2000e-16(c).  (Defendant's brief, pp. 24-25).  In response, plaintiff argues that he timely filed an appeal of the final agency decision to the EEOC and, thereafter, filed this action within 90 days of the EEOC's decision on the appeal.  (Plaintiff's brief, pp. 20-21).  In support of this argument, plaintiff has filed documents establishing that he did, in fact, appeal to the EEOC.  (Plaintiff's Exhibits 53-56).  Defendant argues in reply that, pursuant to Fed. R. Civ. P. 37(c)(1), the court should decline to consider this evidence of the appeal because

16

of plaintiff's failure to reveal this information in discovery.[11]

The court has carefully considered the arguments of the parties and declines to impose the sanction requested by defendant. Clearly, on the facts of this case, striking the documents evidencing plaintiff's appeal would be tantamount to dismissal of this action. Dismissal as a discovery sanction "is appropriate only as a last resort" and upon a finding of willful malfeasance or bad faith. See Malautea v. Suzuki Motor Company, Ltd., 987 F.2d 1536 (11th Cir. 1993). Defendant has not sought a lesser sanction. The court is puzzled by plaintiff's deposition testimony that he had decided not to appeal the decision of the administrative judge. However, even though the defendant agency did not provide the documents from plaintiff's EEOC appeal to the attorney litigating this case, the information clearly was in the hands of the defendant. Plaintiff and his attorneys could not have reasonably believed that government counsel did not have access to these documents. Under these circumstances, it appears more likely that plaintiff's deposition testimony resulted from a misunderstanding than a deliberate attempt to conceal the fact of his administrative appeal from the government, and that plaintiff's attorneys' failure to correct the record resulted from a failure to recognize the significance of the testimony rather than bad faith. Additionally, defendant's argument regarding plaintiff's failure to timely commence this lawsuit occupied only a page and a half of the 30-page brief filed in support of the motion for summary judgment. The time spent by government counsel in addressing this argument – particularly

---

[11] The court construed this argument as a motion to strike and obtained a response from plaintiff. (Docs. ## 81, 83).

in view of the fact that his client should have been aware of the EEOC appeal – does not constitute prejudice sufficient to justify the severe sanction sought by defendant. Accordingly, the court will deny the motion to strike Plaintiff's Exhibits 53-56.

**Timeliness of Appeal of Final Agency Decision to EEOC**

A federal employee may appeal an agency's final action on a discrimination complaint to the EEOC.  Any such appeal must be filed within 30 days of receipt of the final agency decision.  The employee may file a civil action within 90 days of receipt of the EEOC's decision on the appeal.  An employee who does not appeal the final agency decision to the EEOC may file a civil action within 90 days of receipt of the final agency decision. 29 C.F.R. §§ 1614.401(a), 1614.402(a), 1614.407(a), (c).

In this case, the agency failed to issue a final order within forty days of the decision of the administrative judge.  Thus, the administrative judge's decision became the final action of the agency by operation of 29 C.F.R. § 1614.109(i) forty days after the agency's receipt of the administrative judge's decision.  Defendant contends that plaintiff's appeal to the EEOC, filed on  November 30, 2001 (see Plaintiff's Exhibits 53, 54) was, therefore, untimely. Plaintiff argues that under the federal regulatory scheme, plaintiff could appeal from the administrative judge's decision at any time after forty days had passed without a final agency decision or within thirty days of his receipt of an actual final agency decision.  (Doc. # 100).[12]

---

[12]  In this case, the agency inexplicably waited until June 4, 2004 – almost three years after the administrative judge's decision – to issue a final agency decision dismissing plaintiff's complaint based on authority that explicitly applies to dismissals "[p]rior to a request for a hearing in a case. . . ."  See Exhibit B to Moncus' second affidavit; 29 C.F.R. § 1614.107(a).

The court is persuaded that the provision in § 1614.109(i) – that the administrative judge's decision becomes the final action of the agency if the agency does not issue an order within 40 days of receipt of the decision – is meant to bind the agency to the decision unless it objects within 40 days and is not intended to start the clock for plaintiff's appeal.  Section 1614.110(a) states the agency's obligation to issue a final decision in mandatory terms and specifically provides that the final order "shall contain notice of the complainant's right to appeal to the Equal Employment Opportunity Commission, the right to file a civil action in federal district court, the name of the proper defendant in any such lawsuit and the applicable time limits for appeals and lawsuits."  Construing § 1614.109(i) to start a complainant's appeal clock without notice from the agency or the administrative judge regarding the claimant's right to appeal to the EEOC or file a civil action and the applicable time limits would be contrary to the purpose of the regulation, which clearly contemplates formal notice to the complainant of appeal procedures.[13]

　　　　Additionally, even if the court were to determine that plaintiff's appeal to the EEOC was not timely because of § 1614.109(i), the court further concludes that plaintiff has

---

[13]  The EEOC management directive suggests that the 30-day period for appeal starts at the conclusion of the 40-day period.  See EEOC MD-110, Chapter 9, § II(a)(1)(b)(3).  However, this directive also requires that the administrative judge so advise the complainant.  This did not occur in the present case.  The administrative judge's decision advised plaintiff of the 30-day period for appeal to the EEOC from receipt of the agency's final order.  It further advised plaintiff that he could appeal directly from the decision only if the agency failed to issue a final order within 40 days of its receipt of the decision, but it did not clearly advise plaintiff that the 30-day appeal period commenced 40 days from the agency's receipt of the decision.  Additionally, the administrative judge's decision did not advise plaintiff of the applicable time limit for filing a civil action. (See Plaintiff's Exhibit 50).

19

demonstrated that equitable tolling is appropriate on the facts of this case.  Plaintiff has provided evidence that the agency did not give him notice of his appeal rights as required by the federal regulations.  Plaintiff has also provided evidence that he sought assistance in this regard from the administrative judge, but received no response.  (Moncus' second affidavit and attachments).  To the extent the agency provided *any* notice of plaintiff's right to appeal from the decision of the administrative judge, it was either incomplete or no longer accurate.  The only notice that the agency directly provided to plaintiff regarding his appeal rights was in a chart provided to plaintiff by the EEO counselor in December 1998, during the initial stages of administrative processing.  (See Plaintiff's Exhibit 32).  By the time of the administrative judge's decision nearly three years later, however, this chart was no longer accurate as it describes a 60-day period between the hearing decision and the agency final action, rather than 40 days.[14]  The Rural Development Instruction provides incomplete guidance regarding plaintiff's appeal rights, as it only advises of the right to appeal to the EEOC and does not include information regarding filing a civil action.  (See Defendant's Exhibit 39, RD Instruction 2045-X, Exhibit B, p. 5).  It is apparent that plaintiff diligently sought to perfect his appeal, and that he was thwarted by the agency's failure to fulfill its regulatory notice obligations.  Under these circumstances, plaintiff is entitled to equitable tolling of the 30-day time period for appeal to the EEOC.

### Merits of Claim

---

[14] If this guidance were still correct, plaintiff's appeal to the EEOC would have been timely even under defendant's interpretation of the starting point of the 30-day appeal period.

Plaintiff has not argued that his claims of race and gender discrimination are supported by direct evidence of discriminatory intent, nor has he directed the court to any such direct evidence.  The <u>McDonnell Douglas</u>/<u>Burdine</u>[15] framework was established by the Supreme Court for evaluating a Title VII plaintiff's claims of discrimination against an employer where there is no direct evidence of discrimination.  <u>See</u>  <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1527-28 (11th Cir. 1997).  The plaintiff must first make out a *prima facie* case of discrimination.  <u>Burdine</u>, 450 U.S. at 252-53; <u>Walker v. Mortham</u>, 158 F.3d 1177, 1183 (11th Cir.1998); <u>Combs</u>, 106 F.3d at 1527-28.   "Establishment of the *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee.  If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case."  <u>Id</u>. (quoting <u>Burdine</u>, 450 U.S. at 254); <u>Walker</u>, *supra*.

If the plaintiff establishes a *prima facie* case, the employer has the burden of producing "legitimate, non-discriminatory reasons for the challenged employment action." <u>Combs</u>, 106 F.3d at 1528 (citing <u>McDonnell Douglas</u>, 411 U.S. at 802).  "To satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." <u>Combs</u>, 106 F.3d at 1528 (quoting <u>Burdine</u>, 450 U.S. at 257).  If the employer articulates a legitimate, nondiscriminatory reason for its decision, the mandatory

---

[15]   <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973); <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981).

inference of discrimination arising from the *prima facie* case is destroyed.  Walker, 158 F.3d at 1184.  The plaintiff must then produce evidence "including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision."  Combs, 106 F.3d at 1528.

Defendant concedes that plaintiff can establish a *prima facie* case of discrimination on the basis of his race and gender, but argues that defendant is entitled to summary judgment because plaintiff cannot establish that the legitimate, nondiscriminatory reason articulated by defendant for plaintiff's nonselection is pretextual.  In support of defendant's burden to articulate legitimate nondiscriminatory reasons for its decision not to select plaintiff for one of the positions, defendant points to the memos signed by the selecting official, Winningham, on March 5, 1998 and on April 13, 1998 listing his selections for the vacancies announced in the first and second vacancy announcements respectively.  (See Defendant's brief, pp. 27-28)(citing Defendant's Exhibits 18 and 25).  In the March 5 memo, Winningham states:

> I have reviewed the applications and KSAs and interviewed candidates.  I rated each candidate based on the applications and interview questions asked of them.  Based on those results and the reference checks, the selectees, I believe are the best candidates for the job.

(Defendant's Exhibit 18).  In the April 13 memo, Winningham makes essentially the same statement:

> The Branch Chief and I have reviewed the applications and KSAs and interviewed all interested candidates on the Merit Promotion Certificates.  We rated each candidate based on the applications and interview questions asked of them.  Based on those results, these are the selectees we chose and believe

22

are the best candidates for the job.

(Defendant's Exhibit 25).

In reply to plaintiff's argument that this evidence did not meet defendant's burden of production (Plaintiff's brief, p. 23), defendant points to other evidence of record regarding Winningham's reasons for his employment decisions (Defendant's reply, p. 13)(citing Winningham's testimony before the administrative judge, and the administrative judge's decision).

The court is cognizant of the fact that defendant's burden is "exceedingly light" at this stage of the analysis, as defendant argues. See Cooper v. Southern Co., 390 F.3d 695, 725 (11th Cir. 2004)("'It is important to bear in mind . . . that the defendant's burden of rebuttal is exceedingly light . . . At this stage of the inquiry, the defendant need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof.'")(citation omitted).  However, "'the defendant's explanation of its legitimate reasons must be clear and reasonably specific' so that 'the plaintiff be afforded a full and fair opportunity to demonstrate pretext.'  A subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." Chapman v. AI Transport, 229 F.3d 1012, 1034 (11th Cir. 2000)(quoting Burdine, 450 U.S. at 258).

The court concludes that, as plaintiff argues, defendant has not met its burden of articulating a legally sufficient reason for failing to select him for one of the remaining positions during the first round of selections under the 092 announcement.  The analysis of

23

this case is complicated by the fact that it does not fit within the paradigmatic promotion claim, where an employer considers a pool of applicants and selects a single applicant outside the plaintiff's protected class. In its articulation of reasons, defendant has treated Winningham's decision either as one to select fifteen better qualified applicants over plaintiff for fifteen available positions or, at most, as two decisions to select several better qualified applicants over plaintiff for several vacant positions. However, on the facts of this case, Winningham's action on plaintiff's application involved at least three discrete decisions: (1) to select the first group of seven applicants over plaintiff for seven available positions; (2) *not* to select plaintiff for one of the eight remaining vacancies; and (3) to select the second group of eight applicants over plaintiff for the eight remaining vacancies. As to the second decision, plaintiff has established a *prima facie* case of discrimination by evidence that he applied for the position, he was qualified, defendant rejected him[16] and the positions remained open while

---

[16] The court understands that plaintiff had not yet been officially rejected pursuant to federal personnel regulations. This does not change the court's conclusion that plaintiff has established a *prima facie* case. Winningham's testimony, construed in the light most favorable to plaintiff, is that he rejected plaintiff after the first round of interviews:

Q.    . . . I'm wondering why you didn't hire the best – out of the best-qualified group, why did you go back for a second announcement?

A.    Because I didn't get everybody in the first one.

Q.    You didn't get everybody what in the first one?

A.    I only – I either was – I don't know what the numbers were, either seven or six or – only – out of the first group I was only able to identify either six or seven, or whatever the numbers were – about half the staff.

Q.    How many total did you interview?

defendant continued to seek applicants for the position.  See McDonnell Douglas, 411 U.S. at 802 (plaintiff may establish a *prima facie* case by "showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications")(footnote omitted); Cooper, *supra*, 390 F.3d at 724 n. 16.  The presumption of discrimination established by this *prima facie* case – that the employer rejected a qualified plaintiff and sought other applicants because of the plaintiff's membership in a protected class – does not disappear simply because the employer is subsequently able to fill the open position with someone of superior qualifications.

---

A.   I don't recall the numbers, but there were a number that were looked at that were not selected.  And in that first round, I did the branch chief, which would have been Mel Weil, and also the – I think maybe the secretary, I believe, and half of the staff.  And I went back out a second time to try and get another group of candidates to fill out in the remaining positions.

Q.   Okay.  How many people that weren't selected under 92 that interviewed were selected under 92-A?

A.   I don't recall of anybody being under the first one that came in the second.

Q.   So everybody that applied under 92-A was better than those that applied under 92 that were selected initially.

A.   Better – I don't know.  In my mind, when I'm sitting down and interviewing you, I make the best selection that I think is possible at the time I'm doing it.  And so, in my judgment, the candidates that I selected the second time around were the proper ones to select.

(Defendant's Exhibit 2, hearing transcript, pp. 53-54).

Superior qualifications and interview performance of the 092A selectees is not a legally sufficient reason for Winningham's decision – before the readvertisement and before Winningham knew the qualifications of the 092A applicants – not to select plaintiff for one of the eight remaining vacancies in the 092 announcement.  See Patrick v. Ridge, 394 F.3d 311 (5th Cir. 2004).[17]

The court has also carefully considered Winningham's hearing testimony and affidavit, cited by defendant in its reply brief as additional evidence of its articulated reason for plaintiff's non-selection.  To the extent Winningham testifies that he made selections based on how the candidates ranked against each other based on his evaluation of their answers to his interview questions, this reason is legally insufficient to explain his decision not to select plaintiff for one of the eight vacant positions remaining in the 092 announcement.  That is, the relative ranking of the candidates in the first round of interviews does not speak to the

---

[17]  In Patrick, the plaintiff was one of six applicants referred for consideration for a GS-13 position.  The agency convened a three-person panel (including the selecting official) which interviewed and rated the six applicants.  The selecting official and the panel decided not to select any of the six.  As a result, one of the panel members recommended an outside candidate.  After interviewing the outside candidate, the selecting official chose her for the position, stating that she was the "best qualified" person for the position.  394 F.3d at 314.  The Fifth Circuit found that the defendant had not met its burden of articulating a legitimate nondiscriminatory reason for its decision.  The court stated, "We hold as a matter of law that an employer who offers the relative qualifications of the applicants as its legitimate, nondiscriminatory reason must show that, at the time it made the decision adverse to the complaining applicant, it already knew that the ultimately selected individual's qualifications were superior. . . . As the ultimate issue is the employer's reasoning *at the moment* the questioned employment decision is made, a justification that *could not* have motivated the employer's decision is not evidence that tends to illuminate this ultimate issue and is therefore simply irrelevant at this stage of the inquiry.  Especially in the context of this case – the employer's summary judgment motion to dismiss – such an offering is tantamount to offering no reason at all."  Id. at 318, 319-20 (emphasis in original)(footnote omitted).

issue of why Winningham chose to seek other applicants rather than place plaintiff in one of the remaining vacancies (since there were more vacancies than qualified applicants) and the relative ranking of the candidates after the second round of interviews was not known to Winningham when he made this particular decision.

Defendant specifically cites Winningham's testimony that "out of the first group, [he] was only able to identify . . . about half the staff," and that in his judgment, "the candidates [he] selected the second time around were the proper ones to select."  (Defendant's reply brief, p. 12 n. 11)(testimony set forth *supra* n. 14). The only articulation of a reason the court is able to discern from Winningham's remaining hearing testimony is that he chose to seek additional applicants rather than select plaintiff for one of the remaining vacancies because plaintiff did not perform well in the interview.  (Defendant's Exhibit 2, pp. 41-42, 52, 62, 66-69, 76).   Although Winningham testified regarding the method he used for conducting interviews and ranking candidates, he did not identify any specific reason for his negative assessment of plaintiff's interview performance.  Winningham testified:

Q.  Did you ask Mr. Moncus the same questions that you asked all the other applicants in the interview?

A.  Every applicant was asked the same questions the exact same way.

Q.  Why did you ask Mr. Moncus these questions?

A.  Why?  Why did I ask?  To evaluate whether I though he'd make a good selection for the job, as I would every other candidate, as I did for every other candidate.

Q.  Did Mr. Moncus answer the questions?

A.  Yes, he answered them.

Q.  Did you take notes to record his answers to these questions?

A.  Yes, I did.

Q.  Did you take notes to record his answers to these questions?

A.  Yes, I did.

Q.  Did you refer to your notes when evaluating Mr. Moncus?

A. Yes, I did.

Q.  And as you testified earlier, you don't still have these notes.

A.  No, I'm sorry.  I don't.

Q.  Did you evaluate Mr. Moncus' answers to the questions in relation to the criteria that you had established to evaluate all of the applicants.

A.  Yes, I did.

Q.  How did you evaluate Mr. Moncus' answers to these questions?

A.  I didn't think that he'd done very well in the interview.  The specifics of it I cannot remember, but that is what I can recall.  And so as a result of it, his scores were probably less than the other candidates that were selected.

Q.  Did Mr. Moncus' answers to the interview questions meet the criteria that you had established to select candidates for the positions?

A.  When you say "meet the criteria," I'm not sure what that means.  He – as I said earlier, he didn't, in my opinion, do well on the interview.

Q.  Did you use any information in addition to the interview to evaluate Mr. Moncus?

A.  Again, as I said earlier, I don't recall whether I used the application package or not on this particular one.  And without the form, I can't remember, because on some I did, and some I didn't.  Not in this job. I'm talking about for other

28

jobs.

Q.  Did you select Mr. Moncus for GS-12 program complaint specialist position?

A.  No, I did not.

Q.  Why didn't you select Mr. Moncus?

A.  Because of his performance during the interview, that is why he wasn't selected, and the way he scored on the evaluation sheet.

Q.  Why didn't you think that Mr. Moncus would perform well in the position?

JUDGE BELL: Wait a minute.  Wait a minute.  Well, I thought you'd answered it based on – but go ahead and see if you can add anything different.

THE WITNESS: It was how he performed on the interview, is my response.

(Defendant's Exhibit 2, pp. 66-69).

As noted above, "[a] subjective reason is a legally sufficient, legitimate, nondiscriminatory reason *if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion.*" Chapman v. AI Transport, 229 F.3d 1012, 1034 (11th Cir. 2000)(quoting Burdine, 450 U.S. at 258)(emphasis added).  Defendant has not done so in this case.[18]  This is true not only with regard to the Winningham's decision not to

─────────────

[18] In Chapman, the Eleventh Circuit found that the defendant met its burden of articulating a legitimate reason by stating that plaintiff was not hired because of his "poor interview."  However, the testimony in Chapman contained a level of detail that is absent in this case:

Although the proffered reason, Chapman's poor interview, was subjective, AIGCS offered a clear and reasonably specific explanation of why Wogsland and Turnquist, the decisionmakers, arrived at that subjective conclusion.  Wogsland stated:

Within the interview that I conducted with [Chapman], it was

place plaintiff in one of the vacant positions, but also with respect to his reasons for selecting the candidates he chose over the plaintiff.   Although Winningham provides testimony regarding  *how* he developed the questions and conducted the interviews and ranked the candidates, he does not provide any specific evidence of *why* he rated any particular candidate higher than plaintiff. In addition to the testimony set forth above regarding the interviews, defendant has introduced Winningham's selection memos, set forth above, and his October 2000 affidavit (Defendant's Exhibit 27).  Like his hearing testimony, the memos and affidavit are not sufficiently specific to meet the employer's burden.

> Qualifications for selection of an employee can depend upon seniority, length of service in the same position, personal characteristics, general education, technical training, experience in comparable work or any combination of them. A mere statement that the employer hired the best qualified person leaves no opportunity for the employee to rebut the given reason as a pretext, which the employee must do if a proper reason is articulated.

> The Supreme Court made perfectly clear in *Burdine* the reason for requiring the introduction of admissible evidence of the actual reason for the action taken. The Court stated:

---

> basically that he was not very concise with the answers.  He did not take an aggressive approach in asking me questions about the position, where we were going.  His answers were not very sharp, to the point, when I asked them, which basically were the same comments that [Turnquist] gave me about his interview [with Chapman].

> Wogsland observed that Chapman's imprecise answers were not 'the answers [he] would expect [Chapman] needed to [be able to] give to technicians under his control, within his unit."  As an example of an unclear answer given by Chapman, Wogsland stated that Chapman "wasn't very clear about why he had gone from Home [Insurance Company] to several other positions before he got to Transport . . . ."

229 F.3d at 1035.

> Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and *to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext. The sufficiency of the defendant's evidence should be evaluated by the extent to which it fulfills these functions.*

450 U.S. at 255-56, 101 S.Ct. at 1094 (emphasis added in IMPACT).

Increase Minority Participation by Affirmative Change Today of Northwest Florida, Inc. (IMPACT) v. Firestone, 893 F.2d 1189, 1194 (11th Cir. 1990); Cf. Steger v. General Elec. Co., 318 F.3d 1066, 1076 (11th Cir. 2003)("A defendant may not merely state that the employment decision was based on the hiring of the 'best qualified' applicant, but must articulate specific reasons for that applicant's qualifications such as "seniority, length of service in the same position, personal characteristics, general education, technical training, experience in comparable work or any combination" of such criteria.").

Winningham states that he "rated each candidate based on the applications." (Defendants' Exhibits 18, 25).   However, there is no evidence regarding what specific information in those applications made Winningham conclude that the selectees were the "best candidates for the job."   The defendant's introduction of the ranking of the candidates by the merit promotion panel does not cure this deficiency since, as plaintiff argues, there is no evidence that this information was before Winningham when he made his challenged decisions.   Cf. Steger, *supra* ("The introduction of 'personnel records which *may* have indicated that the employer based its decisions on one or more of the possible valid grounds'

31

will not suffice to meet the defendant's rebuttal burden.  The evidence must include facts which show what the decision-maker knew at the time when the decision was made.")(citations omitted)(emphasis in original).

Defendant has failed to carry its "exceedingly light" burden of articulating a legitimate, nondiscriminatory reason for its decisions and, thus, is not entitled to summary judgment on plaintiff's claims.

**CONCLUSION**

For the foregoing reasons, it is

ORDERED that defendant's motion to strike exhibits (included within Doc. # 77) is DENIED.  It is further ORDERED that defendant's motion for summary judgment (Doc. # 41) is DENIED.

Done, this 20th day of January, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE